IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

| | |
|---|---|
| IN THE MATTER OF COMPLAINT OF | CIVIL ACTION |
| DELAWARE BAY LAUNCH SERVICE, INC. AS | IN ADMIRALTY |
| OWNER OF "BIG STONE 5", A 51-FOOT 1985 | |
| CREWBOAT, FOR EXONERATION FROM OR | No. 06-345 (GMS) |
| LIMITATION OF LIABILITY | |

---------------------------------------------------------------x

## FINAL PRETRIAL ORDER

This matter having come before the court at a pretrial conference held pursuant to Fed. R.

Civ. P. 16, and Paul D. Bekman, Esq., Salsbury, Clements, Bekman, Marder & Adkins, LLC,

300 West Pratt Street, Suite 450, Baltimore, MD 21201, (410) 539-6633 and Gilbert F. Shelsby,

Jr., Esq. and Michael J. Logullo, Esq., Shelsby & Leoni, 221 Main Street, Stanton, DE 19804,

(302) 995-6210, having appeared as counsel for Claimant, Richard Greer ("Mr. Greer"), and

Michael B. McCauley, Esq., Palmer Biezup & Henderson LLP, 1223 Foulk Road, Wilmington,

DE 19803, (302) 594-0895, having appeared as counsel for Petitioner, Delaware Bay Launch

Service, Inc. ("DBLS"), the following actions were taken:

(1)      This is an action filed by DBLS for exoneration from or limitation of liability

pursuant to 46 U.S.C. § 30511 (formerly 46 U.S.C. app. § 185). Mr. Greer disputes jurisdiction

in this case and has filed a motion for summary judgment on this issue (see D.I. 24). DBLS

intends to oppose the motion for summary judgment.

(2)      The following stipulations and statements were submitted and are attached to and

made a part of this Order.

1

(a)    a comprehensive stipulation or statement of all uncontested facts which will

become a part of the evidentiary record in the case;[1]

(b)    an agreed statement or statements by each party of the contested issues of fact and

law and a statement or statements of contested issues of fact or law not agreed to;

(c)    except for rebuttal exhibits, schedules in the form set out in the attached Schedule

(c) of:

(1)    all exhibits (all exhibits shall be marked for identification before trial),

including documents, summaries, charts and other items expected to be

offered in evidence and

(2)    any demonstrative evidence and experiments to be offered during trial;[2]

---

[1]    Counsel for plaintiff has the responsibility to prepare the initial draft of a proposed stipulation dealing with allegations in the complaint. Counsel for any counter-, cross or third-party complainant has the same responsibility to prepare a stipulation dealing with allegations in that party's complaints. If the admissibility of any uncontested fact is challenged, the party objecting and the grounds for objection must be stated.

[2]    Items not listed will not be admitted unless good cause is shown. Cumulative documents particularly x-rays and photos, shall be omitted. Duplicate exhibits shall not be scheduled by different parties, but may be offered as joint exhibits. All parties shall stipulate to the authenticity of exhibits whenever possible, and this Order shall identify any exhibits whose authenticity has not been stipulated to and specific reasons for the party's failure so to stipulate. As the attached Schedule (c) indicates, non-objected-to exhibits are received in evidence by operation of this Order, without any need for further foundation testimony. Copies of exhibits shall be made available to opposing counsel and a bench book of exhibits shall be prepared and delivered to the court at the start of trial unless excused by the court. If the trial is a jury trial and counsel desires to display exhibits to the members of the jury, sufficient copies of such exhibits must be made available so as to provide each juror with a copy, or alternatively, enlarged photographic copies or projected copies should be used.

(d)    a list or lists of names and addresses of the potential witnesses to be called by

each party, with a statement of any objections to calling, or to the qualifications

of, any witness identified on the list;[3]

(e)    stipulations or statements setting forth the qualifications of each expert witness in

such form that the statement can be read at the time the expert witness takes the

stand;[4]

(f)    a list of all depositions, or portions thereof, to be read into evidence and

statements of any objections thereto;[5]

(g)    an itemized statement of special damages;

(h)    waivers of any claims or defenses that have been abandoned by any party;

---

[3]    Each party shall indicate which witnesses *will* be called in the absence of reasonable notice to opposing counsel to the contrary, and which *may* be called as a possibility only. Any witness not listed will be precluded from testifying absent good cause shown, except that each party reserves the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary, without prior notice to the opposing party.

[4]    Only one expert witness on each subject for each party will be permitted to testify absent good cause shown. If more than one expert is listed, the subject matter of each expert's testimony shall be specified.

[5]    If any party objects to the admissibility of any portion, both the name of the party objecting and the grounds shall be stated. Additionally, the parties shall be prepared to present to the court, at such time as directed to do so, a copy of all relevant portions of the deposition transcript to assist the court in ruling *in limine* on the objection. All irrelevant and redundant material including all colloquy between counsel shall be eliminated when the deposition is read at trial. If a video deposition is proposed to be used, opposing counsel must be so advised sufficiently before trial to permit any objections to be made and ruled on by the court and to allow objectionable material to be edited out of the film before trial. If good cause is shown as to why objections to portions of a video tape deposition could not be made sufficiently before trial to permit the court to rule, objections shall be handled by a procedure prescribed by the court in accordance with D.Del.LR 30.4(c). Video tape depositions shall otherwise be handled at trial in accordance with D.Del.LR 30.4(d).

(i)     for a non-jury trial, each party shall provide proposed *Findings of Fact and Conclusions of Law* in duplicate;[6]

(j)     a statement summarizing the history and status of settlement negotiations indicating whether further negotiations are ongoing and likely to be productive;

(k)     a statement that each party has completed discovery, including the depositions of expert witnesses (unless the court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted;[7]

(l)     motions *in limine*: No party shall file more than five (5) motions in limine without prior approval of the court. Briefs (opening, answering, and reply) on all such motions shall be due at the time of the filing of this Pretrial Order. Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages. The parties should submit an original and two (2) copies, excluding appendices, declarations, affidavit and exhibits.

(3)     Trial of this case is expected to take three to four days.

(4)     This is a non-jury case.

(5)     This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

---

[6]     These shall be separately stated in separately numbered paragraphs. Findings of Fact should contain a detailed listing of the relevant material facts the party intends to prove. They should not be in formal language, but should be in simple narrative form. Conclusions of Law should contain concise statements of the meaning or intent of the legal theories set forth by counsel.

[7]     If this is a case in which (contrary to the normal requirements) discovery has not been completed, this Order shall state what discovery remains to be completed by each party.

(6)    The parties have considered the possibility of settlement of this case and have

agreed to mediation.

_____

UNITED STATES DISTRICT JUDGE


Date:_____


___/s/_____
Gilbert F. Shelsby, Jr., Esq.
Michael J. Logullo, Esq.
Shelsby & Leoni
221 Main Street
Stanton, DE 19804
(302) 995-6210
-and-
Paul D. Bekman, Esq.
Salsbury, Clements, Bekman,
Marder & Adkins, LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633


Attorneys for Claimant

___/s/_____
Michael B. McCauley, Esq.
Palmer Biezup & Henderson LLP
1223 Foulk Road
Wilmington, DE 19803
(302) 594-0895


Attorneys for Petitioner

## SCHEDULE A

## STATEMENT OF UNCONTESTED FACTS

1.      Mr. Greer was born on March 8, 1954.

2.      On April 10, 2003, Mr. Greer was employed by Maritrans, Inc. as a lightering

coordinator.

**SCHEDULE B**

**STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

**Contested Issues of Fact**

Among other things, the parties dispute:

1.      Whether any incident occurred as alleged by Mr. Greer;

2.      The existence, nature and extent of any alleged injury;

3.      Causation;

4.      Whether Mr. Greer is able to work;

5.      Whether Mr. Greer is permanently and totally disabled.


**Contested Issues of Law**

Among other things, the parties dispute:

1.      Whether there is any liability on the part of DBLS;

2.      Whether Mr. Greer is responsible for any alleged incident and injury;

3.      Whether DBLS is entitled to limitation of liability.

7

## SCHEDULE C

## EXHIBITS (EXCEPT REBUTTAL EXHIBITS)

**Pre-Marked Exhibits**

*The following exhibits were offered by Mr. Greer and marked for identification.*

*DBLS objects to receipt of Greer Exhibits 1-26 into evidence because Mr. Greer has not identified and provided DBLS with copies of the specific documents he seeks to have admitted. Without copies of the proposed exhibits it is impossible for DBLS to examine and review the exhibits and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed exhibits are provided by Mr. Greer.*

1.   Kevin Wallace, M.D. Primary Care Physician. Seen for treatment of injuries incurred as a result of this occurrence, April 28, 2003 to January 23, 2008.

2.   Beebe Medical Center. Underwent various radiological studies July 15, 2003 to October 3, 2003.

3.   Orthopedic Associates of Southern Delaware. Seen for orthopaedic evaluation and treatment, May 23, 2003 through November 2, 2003.

4.   Easter Seals. Underwent Physical Therapy, June, 2003 to September 2003.

5.   Christiana Care Imaging Services. Underwent CT/Abdomen, July 17, 2003.

6.   The Rothman Institute. Seen for treatment of back pain and underwent multiple steroid injections, December, 2003 through March, 2005.

7.   Thomas Jefferson University Hospital. Underwent MRI of C-Spine, December 31, 2003 and August 3, 2004.

8.   Neurology & Neurophysiology/Dr. Mandel. Seen for neurological consult and electrodiagnostic studies, February, 2004 to March, 2004.

9.   PhysioMetrics. Underwent Functional Capacity Evaluation, April, 15, 2005.

10.  Drs. Bird, Baumann & Associates, P.A., August 16, 2006.

11.  American Radiology, MRI of lumbar spine, April 18, 2005.

12.    Stanley Friedler, M.D.  Seen for evaluation of injuries, November 12, 2006.

13.    Charles Smolkin.  Seen for vocational assessment, November 7, 2007.

*(DBLS objects to receipt of Greer Exhibits 12-13 into evidence on the additional ground that Mr. Greer has not provided any curriculum vitae for these witnesses.)*

14.    The Rothman Institute

| | | |
|---|---|---|
| 12/31/03 | 60.00 | |
| 02/06/04 | 0.00 | |
| 02/13/04 | 265.00 | |
| 03/01/04 | 820.00 | |
| 03/15/04 | 1,660.00 | |
| 03/16/04 | 0.00 | |
| 03/23/04 | 0.00 | |
| 04/06/04 | 0.00 | |
| 04/13/04 | 0.00 | |
| 04/27/04 | 0.00 | |
| 05/03/04 | 35.00 | |
| 05/05/04 | 60.00 | |
| 06/07/04 | 0.00 | |
| 07/16/04 | 80.00 | |
| 07/28/04 | 780.00 | |
| 09/03/04 | 0.00 | |
| 04/27/04 | 0.00 | |
| 05/03/04 | 35.00 | |
| 05/05/04 | 60.00 | |
| 06/07/04 | 0.00 | |
| 07/16/04 | 80.00 | |
| 07/28/04 | 820.00 | |
| 09/03/04 | 0.00 | |
| 09/08/04 | 820.00 | |
| 12/16/04 | 80.00 | |
| 01/07/05 | 820.00 | |
| 01/21/05 | 820.00 | |
| 03/08/05 | 60.00 | |
| 03/17/05 | 80.00 | |
| 05/19/05 | 80.00 | |
| 10/20/05 | 0.00 | |
| 10/24/07 | 100.00 | 7,615.00 |

15. Christiana Care Imaging Services/Dr. John McCormack
07/17/03                            537.00
07/17/03                            545.00          1,082.00

16. Beebe Medical Center
07/15/03                          1,122.00
10/03/03                            358.75          1,480.75

17. Neurology & Neurophysiology Associates, P.C.
02/24/04                            315.00
02/24/04                            525.00
02/24/04                            250.00
02/24/04                            540.00
02/24/04                            750.00          2,380.00

18. Associates in Medicine, P.A./Orthopaedic Associates of Southern DE/Shore
    Internal Medicine, P.A./Dr. Kevin Wallace
05/28/03                            175.00
06/11/03                             50.00
07/02/03                             50.00
08/06/03                             65.00
11/05/03                            200.00
04/12/04                             95.00
04/28/04                            120.00
05/19/04                             95.00
08/31/04                             95.00
12/22/04                             95.00
03/23/05                             95.00
07/19/05                             95.00
10/24/06                             95.00
01/19/07                             95.00
05/09/07                             95.00
05/11/07                             95.00
07/17/07                             95.00          1,705.00

19. Medicine & Rheumatology, P.A./Dr. Lourdes Aponte
07/07/05                                               165.00

20.     Easter Seals Rehabilitation
        06/09/03                        237.00
        06/11/03                         99.00
        06/13/03                         99.00
        06/16/03                         99.00
        06/19/03                        148.50
        06/24/03                         99.00
        06/26/03                         99.00
        07/01/03                         99.00
        07/21/03                         99.00          1,078.50

21.     Thomas Jefferson University
        08/03/04                                         2,474.00

22.     American Radiology
        04/18/04                                         1,356.00

23.     Drs. Bird, Baumann and Associates, P.A.
        08/16/06                                         2,400.00

24.     Dr. Stanley Friedler
        11/13/06                                         1,340.00

25.     Happy Harry's Pharmacy
        01/27/04 - 12/18/05                                783.15

26.     Walgreen's Pharmacy
        02/13/06 - 02/20/08                              1,614.37

*DBLS objects to receipt of Greer Exhibits 27-29 into evidence because it is unknown whether these exhibits are the same documents previously produced by Mr. Greer during discovery. Without copies of the proposed exhibits it is impossible for DBLS to examine and review the exhibits and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed exhibits are provided by Mr. Greer.*

27.     U.S. Merchant Marine PIC (Person in Charge) endorsement of loading and
        discharging of dangerous liquid cargo.

28.     STCW issued for international use

29.     Master's License

*DBLS objects to receipt of Greer Exhibits 30(f)-(g) into evidence because Mr. Greer has not provided DBLS with copies of his tax returns for the years 2005 and 2006.  Without copies of the proposed exhibits it is impossible for DBLS to examine and review the exhibits and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed exhibits are provided by Mr. Greer.*

    30.    Income tax returns

        a.    2000
        b.    2001
        c.    2002
        d.    2003
        e.    2004
        f.    2005
        g.    2006

    31.    Notice of Social Security Disability Allowance, December 28, 2006

*DBLS objects to receipt of Greer Exhibits 32-40 into evidence because Mr. Greer has not identified and provided DBLS with copies of the specific documents he seeks to have admitted. Without copies of the proposed exhibits it is impossible for DBLS to examine and review the exhibits and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed exhibits are provided by Mr. Greer.*

    32.    Report of Richard Bird, August 16, 2006

    33.    Richard Grifasi, M.D. records dated August 5, 2004 to April 26, 2006

    34.    Elena Padrell, M.D. reports dated May 12, 2005 and June 14, 2005

    35.    Tidewater Physical Therapy records dated May 26, 2005 through May 31, 2005

    36.    Beebe Medical Center records dated February 11, 2000 through October 3, 2003

    37.    Frederick Kozma, Jr., Ph.D. report dated November 27, 2006

    38.    Joseph Schanno, M.D. report dated November 9, 2006

    39.    Claimant's 2003 Personalized Compensation Statement

    40.    Claimant's Social Security Earnings Record

*DBLS objects to receipt of Greer Exhibits 41 into evidence because Mr. Greer has not provided any curriculum vitae for this witness, the witness does not satisfy Fed. R. Evid. 702-703, and the report is hearsay. DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when a copy of the curriculum vitae is provided by Mr. Greer.*

    41.    Report of Thomas Borzilleri, Ph.D.

*DBLS objects to receipt of Greer Exhibit 42 into evidence insofar as Mr. Greer incorrectly refers to the DBLS Trip Log as the "Log Book of BIG STONE EXPRESS."*

    42.    Log Book of BIG STONE EXPRESS for April 10, 2003

    43.    Launch ticket of BIG STONE EXPRESS for April 10, 2003

*DBLS objects to receipt of Greer Exhibits 44-46 into evidence because Mr. Greer has not identified and provided DBLS with copies of the specific films he seeks to have admitted. Without copies of the proposed exhibits it is impossible for DBLS to examine and review the exhibits and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed exhibits are provided by Mr. Greer.*

    44.    X-rays of Claimant

    45.    MRIs of Claimant

    46.    CT scans of Claimant

*DBLS objects to receipt of Greer Exhibit 47 into evidence insofar as Mr. Greer incorrectly identifies the date of the statement. Further, the statement is hearsay.*

    47.    Statement of David Lewis dated April 10, 2003

    48.    Certificate of Inspection for BIG STONE EXPRESS

*DBLS objects to receipt of Greer Exhibits 49-50 into evidence because Mr. Greer has not identified the source of the data and provided DBLS with copies of the specific data he seeks to have admitted. Without such information it is impossible for DBLS to examine and review the data and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed data are provided by Mr. Greer.*

    49.    Wind data, April 10, 2003, Lewes, Delaware

    50.    Weather data

*DBLS objects to receipt of Greer Exhibits 51-55 into evidence because Mr. Greer has not identified and provided DBLS with copies of the specific documents he seeks to have admitted. Without copies of the proposed exhibits it is impossible for DBLS to examine and review the exhibits and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed exhibits are provided by Mr. Greer.*

51.  Lightering Coordinator Job Description

52.  Records of Claimant's earnings

53.  The complete personnel file of Anthony Ferguson

54.  A copy of al Coast Guard licenses issued to Anthony Ferguson

55.  A copy of all protocols, procedures, standard operating procedures, rules and regulations referring to:

    a.  The operation of any of the launches by Delaware Bay Launch Service, Inc.

    b.  The Operations Manual for any of the vessels owned by Delaware Bay Launch Service, Inc.

    c.  Weather conditions under which the launches will or will not operate.

    d.  Information relating to cessation of operations of the launch services due to weather conditions.

    e.  Recall of vessels due to weather conditions.

    f.  Crewing of vessels under adverse weather conditions.

    g.  Certificate of inspection of the BIG STONE EXPRESS for April 10, 2003.

    h.  A copy of the statement issued by Captain David Lewis relating to the occurrence of April 10, 2003.

    i.  A copy of the report made in the regular course of business concerning the occurrence of April 10, 2003.

    j.  A copy of the personal injury report rendered as a result of the April 10, 2003 occurrence.

    k.       The report made to the United States Coast Guard concerning the occurrence of April 10, 2003.

    l.       The Owner's Operating Manual for the BIG STONE EXPRESS.

    m.     The statement of Richard Greer made to the Defendant.

***The following exhibits were offered by DBLS, received in evidence and marked as indicated:***

1. U.S. Coast Guard Certificate of Inspection for BIG STONE EXPRESS (February 20, 2001 through February 20, 2006)

2. NOAA wind and temperature for Brandywine Shoal Light (April 1-20, 2003)

3. NOAA tide date for Brandywine Shoal Light (April 1-20, 2003)

4. Launch tickets for trips taken by Mr. Greer (April 1-20, 2003)

5. Summary of weather for trips taken by Mr. Greer (April 1-20, 2003)

6. Launch tickets for DBLS trips (April 10-11, 2003)

7. Summary of weather for DBLS trips (April 10-11, 2003)

8. DBLS trip log (April 10, 2003)

9. Logbook of vessel "INTEGRITY" (April 9-11, 2003)

10. Nautical chart of Delaware Bay (No. 12304)

11. Report of Capt. G. F. Adams, U.S.C.G. (Ret.) with Curriculum Vitae

12. Report of John H. Klose, AMS with Curriculum Vitae

13. Report of Stuart L. Gordon, M.D. with Curriculum Vitae

14. Report of Philip Spergel, Ed.D. with Curriculum Vitae

### Medical Records:

|     | Date       | Source              | Description                     |
|-----|------------|---------------------|---------------------------------|
| 15. | 02/25/1999 | Beebe Medical Center | Final Report re Lumbar Spine    |
| 16. | 02/09/2000 | Beebe Medical Center | Emergency Dept. Records         |
| 17. | 02/09/2000 | Beebe Medical Center | Final Report re Lumbosacral Spine |
| 18. | 02/11/2000 | Beebe Medical Center | Final Report re Pelvis & Hips   |

| 19. | 03/31/2000 | Main Line Spine | Initial Evaluation |
| 20. | 04/12/2000 | Christiana Care | MRI Report |
| 21. | 05/17/2000 | Main Line Spine | Reevaluation |
| 22. | 06/07/2000 | Regional Medical Assocs. | IME |
| 23. | 06/07/2000 | Continuum | IME Physical Capabilities |
| 24. | 11/01/2000 | Rothman Institute | Dr. Myers' Consultation |
| 25. | 08/15/2001 | Kevin P.S. Wallace, M.D. | Physical Exam |
| 26. | 11/27/2002 | Irene C. Vola, M.D. | Physical Exam |
| 27. | 04/02/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 28. | 04/09/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 29. | 04/10/2003 | Lab Corp. | Laboratory Report |
| 30. | 04/23/2003 | R. Alberto Rosa, M.D. | EKG Stress Test |
| 31. | 04/23/2003 | R. Alberto Rosa, M.D. | Myocardial Perfusion Study |
| 32. | 04/28/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 33. | 05/12/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 34. | 05/23/2003 | Orthopaedic Assocs. | Medical History |
| 35. | 05/28/2003 | Aquacare | Physical Therapy Order |
| 36. | 06/11/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 37. | 06/23/2003 | Easter Seals | Weekly Progress Note |
| 38. | 06/25/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 39. | 07/09/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 40. | 07/15/2003 | Beebe Medical Center | MRI Lumbar Spine |
| 41. | 09/24/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 42. | 11/05/2003 | Orthopaedic Assocs. | Report |
| 43. | 11/24/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 44. | 12/03/2003 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 45. | 12/31/2003 | Thos. Jefferson U. Hospital | MRI Cervical Spinal |
| 46. | 12/31/2003 | Rothman Institute | Progress Note |
| 47. | 02/13/2004 | Rothman Institute | Musculoskeletal Physical Exam |

| | | | |
|---|---|---|---|
| 48. | 02/13/2004 | Rothman Institute | Diagnostics |
| 49. | 02/13/2004 | Rothman Institute | Pain Questionnaire |
| 50. | 02/13/2004 | Rothman Institute | Physical Examination |
| 51. | 02/24/2004 | Neurology Assocs. | Patient History |
| 52. | 03/09/2004 | Neurology Assocs. | Evaluation |
| 53. | 04/12/2004 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 54. | 04/28/2004 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 55. | 05/05/2004 | Rothman Institute | Progress Note |
| 56. | 05/19/2004 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 57. | 05/19/2004 | Kevin P.S. Wallace, M.D. | Work Capacity Evaluation |
| 58. | 07/16/2004 | Rothman Institute | Progress Note |
| 59. | 08/03/2004 | Thos. Jefferson U. Hospital | MRI Thoracic Spine |
| 60. | 08/03/2004 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 61. | 12/16/2004 | Rothman Institute | Progress Note |
| 62. | 12/22/2004 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 63. | 03/08/2005 | Alexander R. Vaccaro, M.D. | Progress Note |
| 64. | 04/15/2005 | PhysioMetrics | Functional Capacity Evaluation |
| 65. | 04/18/2005 | American Radiology | Examination Results |
| 66. | 05/19/2005 | Rothman Institute | Progress Note |
| 67. | 06/01/2005 | Rothman Institute | Note to Chart |
| 68. | 06/24/2005 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 69. | 07/07/2005 | Lourdes Aponte, M.D. | Office Note |
| 70. | 07/19/2005 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 71. | 10/18/2005 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 72. | 05/01/2006 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 73. | 10/24/2006 | Kevin P.S. Wallace, M.D. | Patient Progress Note |
| 74. | 11/09/2006 | Joseph Schanno, M.D. | Musculoskeletal Report |
| 75. | 07/17/2007 | Kevin P.S. Wallace, M.D. | Patient Progress Note |

DBLS reserves the right to supplement its exhibits upon receipt of Social Security wage and tax information and Mr. Greer's personal logs, production of which is pending.

**Demonstrative Aids**

*For Greer:*

1.    Anatomical model of the spine

2.    Anatomical charts showing the nature and extent of Mr. Greer's injury

3.    PowerPoint presentation relating to Claimant's theory of the case and documents relevant to proof in the case.

*Counsel for DBLS has not been provided with any of the demonstrative aids proposed by Mr. Greer and therefore DBLS objects to their use. DBLS incorporates by reference the objections made to Mr. Greer's proposed exhibits to the extent these aids may contain references to exhibits already objected to by DBLS. Without copies of the demonstrative aids it is impossible for DBLS to examine and review them and their content and therefore DBLS reserves its right to make specific objections under the Federal Rules of Evidence if and when copies of the proposed aids are provided by Mr. Greer.*

*For DBLS:*

*DBLS reserves the right to present demonstrative aids as may be appropriate.*

## SCHEDULE D
## WITNESSES

*For Greer:*

1.      Richard Greer, Claimant

2.      Diane Greer, wife of Claimant

*DBLS objects to the calling of Diane Greer pending an offer of proof and because Mr. Greer did not identify her as a witness expected to testify until March 17, 2008.*

3.      David Lewis, Captain of BIG STONE EXPRESS

4.      Anthony Ferguson, deckhand of BIG STONE EXPRESS

*DBLS objects to the calling of Anthony Ferguson pending an offer of proof and because Mr. Greer did not identify him as a witness expected to testify until March 17, 2008.*

5.      Fred DeBrisk, Dispatcher

*DBLS objects to the calling of Fred DeBrisk pending an offer of proof and because Mr. Greer did not identify him as a witness expected to testify until March 17, 2008.*

6.      Rick Ialluci, Maritrans employee

*DBLS objects to the calling of Rick Ialluci pending an offer of proof and because Mr. Greer did not identify him as a witness expected to testify until March 17, 2008.*


*For DBLS:*

*Witnesses whom DBLS expects to call at trial:*

David Lewis
Captain of BIG STONE EXPRESS

David Brown
Manager at DBLS terminal

H. Hickman Rowland
President of DBLS

Capt. G. F. Adams, U.S.C.G. (Ret.)
Maritime expert

John H. Klose, AMS
Maritime expert

*Witnesses whose testimony DBLS expects to present by trial deposition:*

Stuart L. Gordon, M.D.
Medical expert

Philip Spergel, Ed.D.
Vocational expert

*Witnesses whom DBLS may call at trial or by trial deposition:*

Randy Johnson
Lightering coordinator for Maritrans and a former employee of DBLS

Bobby McIlvane
Launch operator for the Delaware Pilots Association and a former employee of DBLS

**SCHEDULE E**
**STIPULATIONS/STATEMENTS AS TO QUALIFICATIONS OF EXPERT WITNESSES**

It is stipulated and agreed that the following witnesses are qualified as experts in the

area(s) indicated:

*For Mr. Greer:*

**Witness:**

**Area(s) of expertise:**

Stanley Friedler, M.D.

Orthopedic surgeon.  A copy of Dr. Friedler's curriculum vitae is attached. *DBLS objects to Dr. Friedler's qualification as an expert because it has not been provided a copy of his curriculum vitae.*

Captain Mitchell Stoller

Merchant Mariner.  A copy of Captain Stoller's curriculum vitae is attached. *DBLS objects to Captain Stoller's qualification as an expert because it has not been provided a copy of his curriculum vitae or expert report.  Mr. Greer's notice of intent to present expert testimony from Captain Stoller was given for the first time on March 17, 2008.*

Thomas Borzilleri, Ph.D.

Economist.  A copy of Dr. Borzilleri's curriculum vitae is attached. *DBLS objects to Dr. Borzilleri's qualification as an expert because it has not been provided a copy of his curriculum vitae.*

Charles Smolkin

Vocational Evaluator.  A copy of Mr. Smolkin's curriculum vitae is attached. *DBLS objects to Mr. Smolkin's qualification as an expert because it has not been provided a copy his curriculum vitae.*

Kevin Wallace, M.D.

Internal medicine.  Treating physician. *DBLS objects to Dr. Wallace's qualification as an expert because it has not been provided a copy of his curriculum vitae.  DBLS objects to the extent Dr. Wallace is asked to give testimony beyond the*

*records.*

Joseph Schanno, M.D.

General surgeon.  Disability evaluator.
*DBLS objects to Dr. Schanno's qualification as an expert because it has not been provided a copy of his curriculum vitae.  DBLS objects to the extent Dr. Schanno is asked to give testimony beyond the records.*

**For DBLS:**

**Witness:**

**Area(s) of expertise**:

Capt. G. F. Adams, U.S.C.G. (Ret.)

U.S. Coast Guard vessel manning and inspection procedures and enforcement; marine safety

John H. Klose, AMS

Naval architecture, vessel management, vessel operations

Stuart L. Gordon, M.D.

Orthopaedic surgery

Philip Spergel, Ed.D.

Psychology; rehabilitation; vocational

**SCHEDULE F**
**DEPOSITIONS (OR PORTIONS THEREOF) TO BE READ INTO EVIDENCE**
**AND ANY OBJECTIONS THERETO**

Trial depositions of Stuart L. Gordon, M.D. and Philip Spergel, Ed.D.

Portions of the depositions of Richard Greer, David Lewis, and H. Hickman Rowland, Jr.

**SCHEDULE G**
**CLAIMANT'S ITEMIZED STATEMENT OF SPECIAL DAMAGES**

1.    Past medical expenses:   $25,473.77

2.    Future medical expenses:    To be determined by the Court

3.    Past lost wages:   $250,000

4.    Future lost wages:   $759,987 to $919,547

5.    Loss and impairment of wage earning capacity, to be determined by the Court.

6.    Pain and suffering, past, present and future, to be determined by the Court.

**SCHEDULE H**

**CLAIMS OR DEFENSES THAT HAVE BEEN ABANDONED BY ANY PARTY**

None.

## SCHEDULE I

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

*For Mr. Greer:*

1.      The Court lacks jurisdiction over this matter inasmuch as the Petition filed by Delaware Bay Launch Service, Inc. has been filed on behalf of the owner of the BIG STONE 5, a 51-foot 1985 crewboat, for exoneration from or limitation of liability, whereas this incident involved the BIG STONE EXPRESS, a 78-foot boat, owned and operated by Delaware Bay Launch Service, Inc.

2.      This Court is without jurisdiction to decide this case inasmuch as a Petitioner for Limitation of Liability has been filed for a vessel not involved in this incident.

3.      The Petitioner is not entitled to exoneration from liability.

4.      The Petitioner is not entitled to limitation of liability as a result of the incident of April 10, 2003.

5.      The owner's and operators of Delaware Bay Launch Service, Inc. were negligent on April 10, 2003 in the operation of the BIG STONE EXPRESS and are accordingly liable to the Claimant for damages.

6.      The damages to be awarded by the Claimant should be awarded in the following categories:

        a.      Past medical expenses.

        b.      Future medical expenses.

        c.      Past lost wages.

        d.      Future lost wages.

        e.      Loss and impairment of wage earning capacity, to be determined by the Court.

        f.      Pain and suffering, past, present and future, to be determined by the Court.

*For DBLS:*

DBLS incorporates by reference its Proposed Findings of Fact and Conclusions of Law,

attached hereto as a standalone document.

**SCHEDULE J**

**STATEMENT REGARDING HISTORY AND STATUS
OF SETTLEMENT DISCUSSIONS**

The parties have discussed the possibility of settlement and have agreed to mediation.

## SCHEDULE K

### STATUS OF DISCOVERY

It is Claimant's position that the parties have not completed discovery, due to the availability of witnesses, and that discovery remains to be completed as to Claimant's and Petitioner's experts.

It is DBLS's position that discovery has been completed.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

IN THE MATTER OF COMPLAINT OF                    CIVIL ACTION
DELAWARE BAY LAUNCH SERVICE, INC. AS             IN ADMIRALTY
OWNER OF "BIG STONE 5", A 51-FOOT 1985
CREWBOAT, FOR EXONERATION FROM OR                No. 06-345 (GMS)
LIMITATION OF LIABILITY

-------------------------------------------------------------x

## PETITIONER'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Delaware Bay Launch Service, Inc. ("DBLS"), by its undersigned attorneys, respectfully

submits these proposed Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1.      DBLS is the owner of the M/V BIG STONE EXPRESS, a 78-gross ton launch

vessel in the business of transporting persons to and from ships in the Delaware Bay and adjacent

waters of the Atlantic Ocean.

2.      As set forth in the United States Coast Guard Certificate of Inspection in effect at

the time of the alleged incident, the BIG STONE EXPRESS had a 28-passenger capacity, was

qualified to operate up to 100 nautical miles offshore, was in compliance with the applicable

vessel inspection laws and regulations, and was designed to discharge persons in a seaway as

described in 46 C.F.R. § 177.900(e).

PBH: 193474.1

1

3.      Richard Greer was intimately familiar with the operation of vessels at sea.  In high school he worked as a mate on charter fishing vessels in the Atlantic Ocean and the Delaware Bay.  He later obtained a 100-ton master's license and worked as a launch captain with DBLS for approximately 2½ years in the late 1970s and for another six months in 1988.  In the intervening years he ran a commercial fishing business and operated several fishing vessels in the Atlantic Ocean.

4.      In 1991 Mr. Greer began working for Maritrans, Inc. as a lightering coordinator. In this capacity Mr. Greer would travel by launch to oil tankers in the Delaware Bay or sometimes in the Atlantic Ocean to coordinate the lightering process, which involves offloading oil from the tanker into a smaller vessel known as a lighter in order to reduce the tanker's draft and allow the tanker to proceed up the Delaware River.

5.      As of 2003 Mr. Greer had conducted close to 2,000 lightering operations over his 12-year career with Maritrans.  Because each lightering operation entails a launch trip from the shore to the tanker and another launch trip back to the shore, Mr. Greer had made nearly 4,000 launch trips on the Delaware Bay and adjacent waters.

6.      On the evening of April 10, 2003, Mr. Greer was to be the lightering coordinator on the ASTRO CAPELLA, a tanker anchored in Big Stone Beach anchorage in the Delaware Bay.

7.      Mr. Greer booked the launch trip with DBLS and arrived at the DBLS terminal near Milford, Delaware around 4:45 p.m.  According to the closest NOAA weather station located at Brandywine Shoal, the wind at this time was out of the northeast at approximately 30 knots.

PBH: 193474.1

8.      Mr. Greer was aware of the weather conditions.  He not only observed the seas from the DBLS terminal, but that morning he had ridden a DBLS launch to shore after an overnight lightering operation in the Delaware Bay.  Wind speeds during the morning trip were similar to those prevailing in the evening.

9.      From his many years of experience, both on fishing vessels and as a captain with DBLS, as well as his thousands of trips onto the Delaware Bay as a lightering coordinator for Maritrans, Mr. Greer knew that it was unavoidable that the launch vessel would move up and down and side to side in the weather conditions present on the evening of April 10.

10.     Mr. Greer was under no compulsion from DBLS to make the trip to the ASTRO CAPELLA.

11.     Mr. Greer boarded the BIG STONE EXPRESS at approximately 4:50 p.m.[1]  With him on the BIG STONE EXPRESS were the launch captain, David Lewis, and the deckhand, Tony Ferguson.  Mr. Greer was the only passenger.

12.     Captain Lewis was competent, properly licensed, and very experienced in the operation of the BIG STONE EXPRESS.  He had been a launch captain with DBLS for sixteen

---

[1]  In the complaint he filed in Delaware Superior Court on April 10, 2006, and in his answer to the limitation petition in this Court, Mr. Greer averred that he was injured aboard the BIG STONE 5.  At his deposition he again stated under oath that the alleged injury occurred on the BIG STONE 5.  He now contends that he was injured not on the BIG STONE 5 but on the BIG STONE EXPRESS.

   Given Mr. Greer's familiarity with the launch vessels in the DBLS fleet, the fact that he made no report to DBLS about any injury occurring on April 10, 2003, and his averments on the record and sworn testimony that he was injured on the BIG STONE 5, the more likely date of the alleged incident was April 1, 2003, when he was a passenger on the BIG STONE 5.  His claim is therefore time-barred by 46 U.S.C. § 30106 (formerly 46 U.S.C. app. § 763a), the 3-year statute of limitation for maritime personal injury claims.

years and was thoroughly familiar with the operation of launch vessels in and around the

Delaware Bay.

13.    DBLS reasonably and prudently gave its launch captains authority to decide

whether or not it was safe to make a particular trip.  Each DBLS launch captain had discretion to

decline to make a particular trip if, in the captain's judgment, it was not safe to do so.

14.    There was no need for the BIG STONE EXPRESS to suspend service on the

evening of April 10.  When he was a captain with DBLS, Mr. Greer himself operated launch

vessels and transported passengers many times in similar or identical conditions.  Earlier in the

day DBLS had transported a United States Coast Guard boarding team, another Maritrans

lightering coordinator, an electronics technician, and various surveyors and crewmembers to

ships in the Delaware Bay, all without any incidents or complaints and while weather conditions

were substantially similar to those prevailing in the evening.

15.    The BIG STONE EXPRESS departed the DBLS terminal at approximately 5:00

p.m. with Captain Lewis, Deckhand Ferguson, and Mr. Greer onboard.  After approximately five

minutes the BIG STONE EXPRESS cleared the Mispillion River jetties, entered the western side

of the Delaware Bay, and proceeded east toward the "B" Buoy, which marks the western edge of

Big Stone Beach anchorage.  Mr. Greer was in the pilothouse with Captain Lewis and Deckhand

Ferguson.

16.    For about the first 15 minutes of the trip, Deckhand Ferguson steered the vessel

under the direct supervision of Captain Lewis, who stood immediately beside him.  This is

consistent with normal and customary practice in the maritime industry and was not a violation

of any federal statute or U.S. Coast Guard regulation.

PBH: 193474.1

4

17.     Less than halfway into the trip Mr. Greer decided to walk aft and sit in the passenger cabin.  The BIG STONE EXPRESS was slowed to about half-speed (approximately 11 knots) or perhaps less, and Mr. Greer walked aft into the passenger cabin.  The vessel continued at about half-speed toward the anchorage.

18.     After reaching the "B" Buoy at the western edge of the anchorage, the BIG STONE EXPRESS turned southeast toward the ASTRO CAPELLA, which was in the deep water in the southern part of the anchorage.

19.     In the vicinity of the ASTRO CAPELLA the seas were approximately 4 to 6 feet, higher than they had been along the route traveled by the BIG STONE EXPRESS.

20.     At no point during the trip did Mr. Greer inform Captain Lewis or Deckhand Ferguson that he was experiencing any pain or injury, nor did he express any complaints about the manner in which the BIG STONE EXPRESS was operated.

21.     The BIG STONE EXPRESS arrived at the ASTRO CAPELLA at approximately 5:45 p.m., and Mr. Greer climbed aboard and conducted the lightering operation without incident.

22.     Mr. Greer returned to shore on the BIG STONE EXPRESS at 0235 on the morning of April 11.

23.     In the following weeks Mr. Greer made two more round trips on DBLS launches to conduct lightering operations in the Delaware Bay.  He never mentioned any incident or injury to anyone at DBLS.  The first notice to DBLS of an alleged injury was the complaint filed by Mr. Greer three years later in Delaware Superior Court.

PBH: 193474.1

24.    As early as February 1999, Mr. Greer was diagnosed as having degenerative changes in his lumbar spine. In February of 2000, Mr. Greer fell while working for Maritrans aboard a tanker, landing on a cruciform bit and seriously injuring his entire back from the neck down to the lumbar region. He was out of work for approximately one year as a result of this accident, and when he did return to work he was on light duty for at least six months. Numerous reports from various providers indicated that there was degeneration of the lumber spine in addition to disc herniation. As late as November 2002, he was still making complaints to his physician about neck pain related to the February 2000 fall.

25.    On April 28, 2003, nearly three weeks after allegedly being injured aboard the DBLS launch, Mr. Greer visited his family physician, Dr. Kevin Wallace, complaining of lower back pain. Mr. Greer told Dr. Wallace that the pain had been present for 4-5 days and that he did not know whether it was the result of an injury. Dr. Wallace concluded that Mr. Greer was experiencing symptoms due to degenerative disc disease.

26.    In a medical questionnaire completed on May 23, 2003, to assist one of his doctors, Mr. Greer indicated that he had pain in his upper and lower back but he left blank the question that asked him whether the problem was the result of an injury.

27.    Mr. Greer sustained no injury aboard the DBLS launch vessel.

28.    There is no objective evidence that Mr. Greer's alleged back pain was caused by an injury aboard the DBLS launch vessel.

29.    At the time of the injury alleged by Mr. Greer, the fair market value of the BIG STONE 5 was $100,000.

## CONCLUSIONS OF LAW

1.      The Court has subject matter jurisdiction pursuant to 46 U.S.C. § 30511 and venue is proper in accordance with Supplemental Admiralty Rule F(9).

2.      As it involves an alleged injury aboard a vessel on navigable waters, Mr. Greer's claim is governed by general maritime law. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959).

3.      In this limitation proceeding, Mr. Greer proceeds with his proofs first and must carry the burden of proving negligence on the part of the launch vessel, causation, and damages. If he fails to carry his burden of proof in this regard, a decree of exoneration must be entered in favor of DBLS.  If Mr. Greer does prove negligence, causation, and damages, DBLS then has the opportunity to show that the accident occurred without its privity or knowledge.  If DBLS makes this showing then its liability is limited to the value of the vessel. *See generally In re Lenzi*, 1991 AMC 1531 (E.D. Pa. 1991), *aff'd* 958 F.2d 363 (3d. Cir. 1992).

4.      Mr. Greer bears the burden of proving all the elements of his negligence claim, i.e., a duty by the launch vessel, a breach of that duty, and proximate causation. *See, e.g., In re Reel Action Charters, Inc.*, 2006 U.S. Dist. LEXIS 71140, at *11 (E.D.N.Y. 2006) (discussing passenger's burden of proof in a limitation proceeding and exonerating owner from liability for injuries related to heavy swells).

5.      Because Mr. Greer was not a member of the crew of the launch vessel, the only duty owed to him was one of reasonable care under the circumstances. *Kermarec*, 358 U.S. at 630-32; *Parker v. Southwestern Offshore Corp.*, 763 So. 2d 638, 643 (La. App. 2d Cir. 1999).

6.    The launch vessel was not an insurer of Mr. Greer's safety, *Monteleone v. Bahama Cruise Line*, 838 F.2d 63, 65 (2d Cir. 1988), and owed him no warranty of seaworthiness. *Kermarec*, 358 U.S. at 629.

7.    It is a matter of common knowledge that a vessel moves up and down and side to side when operating in a seaway, and that such erratic movements are unavoidable. *Aronowitz v. Molero*, 273 F. Supp. 226 (E.D. La. 1967); *Summers v. Motor Ship Big Ron Tom*, 262 F. Supp. 400, 405 (D.S.C. 1967); *Lockhart v. Martin*, 324 P.2d 340, 341, 1962 AMC 1076, 1078 (Cal. App. 1958).

8.    A passenger cannot recover for injuries caused by the unavoidable movements of a vessel at sea. *Wille v. Dana*, 962 F. Supp. 1334, 1336 (D. Or. 1997); *cf. Ludena v. The Santa Luisa*, 112 F. Supp. 401, 406-07 (S.D.N.Y. 1953); *Van Nieuwenhove v. Cunard S.S. Co.*, 216 F.2d 31 (7th Cir. 1954).

9.    The vessel has no duty to warn a passenger about weather-related risks that are as apparent to the passenger as they are to the vessel. *Petition of Binstock*, 213 F. Supp. 909, 915 (S.D.N.Y. 1963); *Zahares-Cody v. Norwegian Cruise Line*, 2005 AMC 994, 996 (Fla. 11th Cir. 2005); *cf. The Euxinia*, 150 F. 541, 544 (3d Cir. 1907) (noting visitor's familiarity with the ship in holding that the ship was free of negligence when visitor fell into an open hatch).

10.    A passenger has a duty to exercise good judgment and reasonable care for his own safety in light of the sea conditions that he knows exist. *Moses v. Compagnie Generale Transatlantique*, 16 F. Supp. 197, 200 (S.D.N.Y. 1936); *The Empress of Scotland*, 11 F.2d 783, 784 (S.D.N.Y. 1926), *aff'd per curiam* 24 F.2d 1018 (2d Cir. 1928).

11.     Mr. Greer was a seasoned mariner, was familiar with the operation and riding characteristics of vessels in general and of launch vessels in particular, was aware of the sea conditions on the Delaware Bay, and required no warning that the launch vessel would pitch and roll on its way to the ASTRO CAPELLA.

12.     The launch vessel exercised reasonable care under all the circumstances.

13.     The launch vessel breached no duty to Mr. Greer

14.     If Mr. Greer was injured on the launch vessel, the injury was caused solely by his own negligence and any recovery is therefore barred.  Alternatively any award must be reduced according to the percentage share of his negligence.

15.     Mr. Greer's alleged back and neck pain, if any, was not caused by any act or omission by the launch vessel but instead was caused solely by a preexisting degenerative condition and a prior accident for which DBLS has no responsibility.  Alternatively Mr. Greer has not his burden of differentiating between pre-existing injuries or conditions and those for which the launch vessel is allegedly responsible.

16.     DBLS is entitled to a decree of exoneration.

17.     In the alternative, having supplied a sound launch vessel and a competent captain, DBLS is entitled to a decree limiting its liability to the market value of the launch vessel.  At most, Mr. Greer's alleged injury was the result of operational decisions made by the launch captain.  DBLS was without privity or knowledge of any negligent acts alleged by Mr. Greer. *See In re Kristie Leigh Enterprises*, 72 F.3d 479, 482 (5th Cir. 1996) (affirming the long-standing rule that a vessel owner may rely on the expertise of a competent captain and that such reliance does not equate to privity or knowledge). *Deep Sea Tankers, Ltd. v. The Long Branch*, 258 F.2d

757, 771 (2d Cir. 1958) (owner entitled to limit liability notwithstanding captain's operational

errors); *The G. K. Wentworth*, 67 F.2d 965, 966 (9th Cir. 1933) (granting limitation and holding

that "an owner who has appointed a competent shipmaster is entitled to rely on his judgment in

the navigation of the ship, and should not hamper the further exercise of his judgment with

instructions and orders."); *The Oneida*, 282 F. 238, 241 (2d Cir. 1922) (holding that for purposes

of limitation the vessel owner "is only chargeable for his willful and negligent acts, and the

negligence of those in charge of the navigation of the vessel, to which he was not privy and of

which he had no knowledge, will not be imputed to him").


Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

By:   /s/ Michael B. McCauley
       Michael B. McCauley (ID 2416)
       1223 Foulk Road
       Wilmington, DE 19803
       (302) 594-0895
       (302) 478-7625 (fax)
       mccauley@pbh.com
       Attorneys for Petitioner